

55-6

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Morton Denlow | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 01 C 5618 | **DATE** | 3/12/2002 |
| **CASE TITLE** | Jones v. Barnhart | | |

**MOTION:**

[In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m) ☐ General Rule 21 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] Enter Memorandum Opinion and Order. Plaintiff's motion for summary judgment [10-1] is granted. Defendant's motion for summary judgment [13-1] is denied, and the case is remanded to the Commissioner pursuant to the fourth sentence of 42 U.S.C. Section 205(g) for further proceedings consistent with this opinion. The commissioner is ordered to readjudicate Claimant's claim of disability beginning at Step Four.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | | |
|---|---|---|---|---|
| | No notices required, advised in open court. | | number of notices | **Document Number** |
| | No notices required. | | | |
| ✓ | Notices mailed by judge's staff. | | MAR 13 2002 | |
| | Notified counsel by telephone. | | date docketed | 16 |
| | Docketing to mail notices. | | docketing deputy initials | |
| | Mail AO 450 form. | | 3/12/2002 | |
| | Copy to judge/magistrate judge. | | date mailed notice | |
| DK | courtroom deputy's initials | | DK | |
| | | | mailing deputy initials | |

U.S. DISTRICT COURT
CLERK
02 MAR 12 PM 4:14

Date/time received in
central Clerk's Office

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

CHARLES JONES,     )
          )
    Plaintiff,    )
          )
    v.       )  No.  01 C 5618
          )
JO ANNE B. BARNHART,   )  Magistrate Judge Morton Denlow
Commissioner of Social Security, )
          )
    Defendant.   )

DOCKETED

MAR 1 3 2002

## MEMORANDUM OPINION AND ORDER

This case comes before the Court for a review of the final decision of Defendant, the Commissioner of Social Security ("Commissioner"), denying Plaintiff, Charles Jones ("Claimant" or "Jones"), supplemental security income ("SSI") under the Social Security Act ("SSA" or "Act") 42 U.S.C. § 1382 (a)(1)(A). Jones asserts he is disabled due to a heart condition, high blood pressure and depression. (R. 72).

Jones seeks judicial review of the Commissioner's final decision finding that he was not disabled. The matter comes before this Court on cross-motions for summary judgment. The issue to be decided is whether substantial evidence in the record supports the finding of the Administrative Law Judge ("ALJ") that Jones was not disabled. For the reasons set forth below, the Court reverses the ALJ's decision and remands the case to the Commissioner for further proceedings consistent with this opinion beginning at Step Four.

# I. PROCEDURAL BACKGROUND

Jones filed an application for SSI benefits in January, 1991. (R. 27). After a hearing before an ALJ, Jones' application was granted. He was found disabled with substance abuse being a contributing factor material to his disability. *Id.* After the enactment of the Personal Responsibility and Work Opportunity Reconciliation Act of 1996 (the "Welfare Reform Act"), Jones was notified his SSI benefits would cease as of January, 1997. *Id.* Jones reported his disability was unrelated to substance abuse and requested a review of his benefits termination. The termination decision was affirmed on February 11, 1997, after a face-to-face reconsideration hearing. (R. 58-70).

Jones filed a timely request for a hearing before an ALJ. (R. 71). The hearing was originally scheduled for March 27, 1998, but Jones appeared and requested postponement to seek representation. (R. 51-57). A hearing was then held before ALJ Helen G. Cropper on May 6, 1998, and Jones appeared with counsel. (R. 334-444).

In her November 27, 1998 decision, the ALJ found Jones was not disabled at any time after January 1, 1997, and he had the physical and mental residual functional capacity ("RFC") to return to his past relevant work. (R. 24-49). Jones filed a timely request for review of the ALJ's finding by the Commissioner's Appeal Council on January 29, 1999. (R. 22). Jones request was denied on February 16, 2001, thereby making the ALJ's decision the final determination of the Commissioner (R. 9-10). Jones subsequently filed a request for judicial review pursuant to 42 U.S.C. § 405(g).

## II. STANDARD OF REVIEW

Judicial review of a Commissioner's final decision is governed by 42 U.S.C. § 405(g) which provides that the "findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive..." An ALJ's decision becomes the Commissioner's final decision if the Appeals Council denies a request for review. *Wolfe v. Shalala*, 997 F.2d 321, 322 (7th Cir. 1993). Under such circumstances, the decision reviewed by the district court is the decision of the ALJ. *Eads v. Secretary of the Dept. of Health and Human Serv.*, 983 F.2d 815, 816 (7th Cir. 1993). A reviewing court may not decide facts anew, reweigh evidence, or substitute its own judgment for that of the Commissioner. *Knight v. Chater*, 55 F.3d 309, 313 (7th Cir. 1995).

Judicial review is limited to determining whether the ALJ applied the correct legal standards in reaching its decision and whether there is substantial evidence in the record to support his findings. *Scivally v. Sullivan*, 966 F.2d 1070, 1075 (7th Cir. 1992); 42 U.S.C. § 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427 (1971). The court may reverse the Commissioner's decision only if the evidence "compels" reversal, not merely because the evidence supports a contrary decision. *INS v. Zacarias*, 502 U.S. 478, 481, 112 S.Ct. 812, 815 n.1 (1992). The SSA gives a court the power to enter a judgment "affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42

U.S.C. § 405(g).

## III. ESTABLISHING A DISABILITY

In order to be entitled to SSI under Title XVI of the SSA, the claimant must establish a "disability" under the Act. *Zurawski v. Halter*, 245 F.3d 881, 885 (7th Cir. 1997). To establish a "disability" the claimant must show he is suffering from a medically determinable physical or mental impairment which can be expected to last for at least 12 months. 42 U.S.C. § 1382c(a)(3)(A). Additionally, an individual shall be considered disabled "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work..." 42 U.S.C. § 1382c(a)(3)(B).

The Social Security Regulations provide for a five-step process to determine whether the claimant has established a "disability." 20 C.F.R. § 404.1520(a). The process is sequential; if the ALJ finds the claimant is disabled or is not disabled at any step in the process, the analysis ends. *Id.* In the first step, the ALJ considers whether the claimant is working and whether such work is "substantial gainful activity." *Id.* at § 404.1520(b). If the claimant is working, the ALJ will find he is not disabled irrespective of medical condition, age, education and work experience. *Id.*

If the claimant is not working, the ALJ will address step two: whether the claimant has an impairment or combination of impairments that is "severe." *Id.* at § 404.1520(c). A

"severe" impairment is one which "significantly limits [the claimant's] physical or mental ability to do basic work activities." *Id.* Basic work activities include sitting, standing, walking, lifting, carrying, pushing, pulling, reaching, handling, seeing, hearing, speaking, understanding, carrying out and remembering simple work instructions, and using judgment. *Id.* at § 404.1521(b). The ALJ is to consider the combined effect of multiple impairments "without regard to whether any [single] impairment, if considered separately, would be of sufficient severity." *Id.* at § 404.1523; 42 U.S.C. § 423(d)(2)(B). If the ALJ finds the claimant does not have a severe impairment, the claimant is found not to be disabled and the sequential analysis ends. 20 C.F.R. at § 404.1520(b).

If the ALJ finds the claimant's impairment is severe, the ALJ considers step three: whether the severe impairment meets any of the impairments listed in Appendix 1 of Subpart P of Regulations No. 4. *Id.* at § 404.1520(c). If the claimant's impairment meets or equals any impairments listed in the regulations, the ALJ will find the claimant is disabled.

If the impairment does not meet any listed impairment, the ALJ moves to step four, which involves a consideration of claimant's "residual functional capacity" and the "physical and mental demands" of the past relevant work experience. *Id.* at § 404.1520(e). A claimant's residual functional capacity ("RFC") is what that person is able to do, despite his or her limitations. *Id.* at § 404.1545. If the claimant is still able to perform work that he had performed in the past, the ALJ will find the claimant is not disabled. *Id.* at § 404.1520(e).

If the claimant's impairment is so severe that he is unable to perform past relevant work, the burden shifts to the Commissioner in step five to show the claimant, considering his age, education, past work experience, and RFC, is capable of performing other work which exists in the national economy. 42 U.S.C. § 423(d)(2)(A).

## IV. THE ALJ DECISION

The ALJ determined Jones is not disabled and has not been disabled for any continuous period of 12 months. (R. 43-45). Jones was 57 years old at the time of the hearing. (R. 346). He received his GED while serving in the armed forces as a cook. *Id.* Until November 1988, he worked as a drug counselor in a veteran's hospital for 15 years. (R. 347). He stopped working as a drug counselor after he had a drug relapse which involved the use of cocaine, heroine and marijuana. (R. 348). Jones has not engaged in substantial gainful activity since his departure from his occupation as a drug counselor. *Id.* At the time of the hearing, Jones was attending the New Age Drug Treatment Program where he receives methadone and participates in individual and group counseling. (R. 348-349).

## A. CLAIMANT'S PHYSICAL AND MENTAL IMPAIRMENTS

Originally, Jones claimed his disability was due to various physical impairments and a mental impairment of depression. (R. 31-36). The ALJ determined none of Jones' physical or mental impairments are so severe as to medically meet or equal a listed impairment under the Code of Federal Regulations, and he had the ability to return to work. (R. 30, 42). The Claimant and the defendant have not disputed the ALJ's finding with regard to Jones'

physical impairment. However, there is a dispute concerning the ALJ's decision on Jones' mental impairment.

### 1.    Claimant's history of physical impairments

In June 1996, after being exposed to tuberculosis, Jones was referred to the Board of Health, in which he received treatment for six months, tolerated treatment well, and all his sputum tests were negative. (R. 36). At this time, he was treated for his hypertension. *Id.* On September 26, 1996, due to chest pains, Jones received a cardiac catheterization at the University of Chicago. *Id.* The results showed Jones had no significant coronary artery disease and had a normal left ventricular systolic function, with elevated left ventricular and end-diastolic pressure. (R. 36). Jones maintained his prescriptions for anti-hypertensive medication and asthma inhalers throughout the period in question. *Id.* Most of his examinations indicated that his lungs were clear. *Id.*

On September 10, 1996, Jones received an internal medicine examination by Dr. George Bridgeforth. *Id.* Dr. Bridgeforth administered a chest and lung examination showing a moderately prolonged expiratory phase, with occasional and expiratory wheezing. *Id.* Dr. Bridgeforth diagnosed Jones as having a history of asthma; chest wall pain of undetermined etiology, with a differential diagnosis including angina versus asthma; a history of polydrug dependence; and exposure to tuberculosis. (R. 37).

On November 14, 1996, as a follow-up to Dr. Bridgeforth's exam, Jones received pulmonary function testing at Lake Shore Medical Clinic. While receiving the tests, Jones

was cooperative and had good comprehension and effort. *Id.* Jones' cardiac stress test was inconclusive because he did not exercise long enough to reach the target heart rates. *Id.*

### 2. Claimant's history of mental impairments

In June 1996, after reporting to the hearing officer he was depressed, Jones received a psychiatric consultative examination performed by Dr. Ana Gil on September 10, 1996. (R. 108-111, 32). Dr. Gil's report indicated Jones had a normal mental status examination and found no evidence of psychosis or of a thought process disorder. (R. 111). Dr. Gil administered standard memory tests establishing Jones' responses were perfect. She noted Jones was attentive and cooperative throughout the examination. (R. 110). During the examination, Jones never reported difficulty in sleeping, but did state he was still depressed about the 1988 death of a girlfriend. (R. 109). Dr. Gil described Jones' mood as generally positive and only diagnosed Jones with substance related impairments which were all in remission since 1992. (R. 111). On February 26, 1996, based on Dr. Gil's report, non-examining psychologist D.G. Hudspeth, prepared a Psychiatric Review Technique form. (R. 33, 116-124). In Dr. Hudspeth's opinion, Jones has a normal mental status exam and his only mental impairment was substance dependence which was in remission. (R. 114).

On February 24, 1998, Jones first sought treatment for his alleged depression at his local community mental health clinic in which Dr. Joyce Miller treated him. (R. 309-312). Jones continued to see Dr. Miller monthly between February and July. (R. 34). At the first visit, Dr. Miller reported Jones was feeling "hopeless and helpless since 1988," but the

depression worsened during the preceding six months. (R. 33). Although Dr. Miller reported Jones' memory and attention were poor, she described Jones as coherent and goal directed, he had logical thought processes, was alert and orientated times three, was of average intelligence, had some insight into his problems, had no perceptual problems and his main concern was his poor financial situation. *Id.* Dr. Miller's Axis I diagnosis were major depression, single episode, moderate in severity, a history of heroin dependence and a GAF score of 60. (R. 34). Dr. Miller prescribed Jones Paxil and noted his goals were to abstain from substances and to return to work. *Id.*

On March 12, 1998, Dr. Miller completed an Illinois Department of Public Aid Report of Incapacity, indicating Jones suffered from major depression, with marked social limitations, marked decrease in concentration and attention, and his response to the antidepressant medication was "minimal." (R. 34, 161-163).

In June 1998, Dr. Miller described Jones' mood as more hopeful. (R. 34). In September 1998, Dr. Miller reiterated her February diagnosis. (R. 329-332). She noted he has minimal limits in performing daily activities, but is markedly impaired in social functioning, has frequent lapses of concentration, persistence and pace, and frequent episodes of decompensation in work-like settings. *Id.*

### 3. The ALJ did not adopt all of the medical opinions with regard to Claimant's mental impairment

The ALJ did not adopt Dr. Miller's opinions explaining the doctor's opinion of Jones' functional limitations is not clear from her initial assessment or from her progress notes. (R.

9

34). Moreover, no explanation is given in the progress notes for the reasons of Jones' social functioning being markedly limited. *Id.* Although Dr. Miller indicated no further tests were needed in September 1998, her progress notes are devoid of performing any objective medical tests on Jones' concentration or memory. *Id.* Also, the ALJ explained Dr. Millers' assessment of Jones' social limitations and frequent decompensation is materially inconsistent with Jones' uncontradicted testimony about his attendance at the New Age program. (R. 35). Further, Dr. Miller's September 1998 opinion that Jones responded poorly to medication is inconsistent with her prior notes which stated he reported feeling better. *Id.* The ALJ instead adopted Dr. Gil's and Dr. Hudspeth's opinions which were based on objective medical evidence. (R. 33).

### 4. The testimony during the hearing regarding the Claimant's physical and mental impairments

During the hearing, Jones testified he has been abstinent from drugs since sometime in 1996 (R. 383), he performs household chores such as sweeping, mopping and cleaning dishes, he also watches television, and reads the newspaper. (R. 383, 351, 354). He testified he has trouble concentrating while watching television and reading the newspaper. (R. 351-352). He complained of having chest pains while performing household chores or while he was sitting down; being forgetful; sleeplessness; trouble breathing due to his asthma, and depression. (R.355-356, 359, 360-366).

Dr. Abramson, a medical expert ("ME") testified the abnormality in Jones' ECG exam is mild, and the ECG's in the record in combination with other medical evidence do not

10

establish a listing level cardiac impairment, or a cardiac basis for the reported chest pains. (R. 407-409). The ME explained Jones' chest pains could be caused or exacerbated by cardiac spasm related to cocain or heroine use. (R. 413). The ME testified he agreed with Dr. Patey's November 21, 1996 residual functional capacity ("RFC") assessment in which Dr. Patey stated Jones had the physical RFC to perform close to the full range of light work, including the ability to lift, carry, push and pull up to 20 pounds occasionally and up to ten pounds frequently, could stand and or walk for six hours and could sit for about six hours with normal breaks. (R. 410-411). The ME concluded Jones should avoid work which requires prolonged or concentrated exposure to extremes of temperature, humidity, or respiratory irritants. (R. 410).

Susan Entenberg, a vocational expert ("VE"), testified Jones' past relevant work as a rehabilitation technician is sedentary and semi-skilled. (R. 432). She explained his skills as a drug counselor are transferable to other para-professional counseling positions with some additional, short term, training adjustments. *Id.* She also testified she was unaware of any licensing regulations or requirements for drug counselors which would preclude Jones from being a drug counselor due to his taking of methadone. *Id.*

## B. THE ALJ DETERMINED THE CLAIMANT WAS NOT DISABLED

Based on the evidence in the record and the testimony given at the hearing, the ALJ found Jones satisfied Step One of the disability assessment because he has not engaged in substantial gainful activity since 1988, when he last was employed by the Veteran's

Administration as a drug counselor. (R. 30). At Step Two, the ALJ determined Jones had severe respiratory impairments because they imposed at least minimal restrictions on his ability to perform work related activities. *Id.*

At Step Three, the ALJ decided none of Jones' physical or mental impairments, considered separately and in combination, are so severe as to medically meet or equal a listed impairment under the Code of Federal Regulations. *Id.* As for the physical impairments, the ALJ explained she adopted the ME's opinion that Jones' physical impairments do not meet or equal a listed impairment. *Id.*

As for the mental impairments, the ALJ found Jones did not have a listing level mental impairment. (R. 36). She questioned whether Jones' depression is to the degree he testified and has reported to Dr. Miller, since his alleged depression is not supported by the objective medical evidence. (R. 41). The ALJ did not adopt Dr. Miller's opinion that Jones currently suffers from depression. (R. 34). Instead, the ALJ adopted Dr. Gil's and Dr. Hudspeth's assessments because these opinions were based on objective medical evidence which diagnosed Jones' only severe mental impairment as substance abuse which was in remission. (R. 33, 36).

The ALJ found Jones' memory and concentration are not markedly impaired, reasoning Jones was a reliable historian both at the hearing and to his consulting doctors. (R. 35). Moreover, the record did not establish a basis to conclude the Claimant had a dramatic memory loss since Dr. Gil's examination. (R. 35).

12

At Step Four, the ALJ adopted Dr. Patey's and the ME's opinion and found Jones had "the physical RFC to perform close to the full range of sedentary work. He can lift, carry, push and pull up to 10 pounds frequently. He can stand and walk for a total of two hours in a work day, with uninterrupted periods of up to 15 minutes. He can sit for six hours in a work day, and can occasionally climb ramps and stairs, stoop, kneel, crouch and crawl. He should not climb ladders, ropes or scaffolds, or be exposed to extremes of temperature, humidity, respiratory irritants or unprotected heights." (R. 42). Adopting Dr. Hudspeth's and Dr. Gil's opinion, the ALJ found Jones "has a good mental RFC. While his occasional feelings of depression and other subjective problems might interfere with claimant's concentration, persistence or pace for a combined total of 10% of the work day, claimant has the mental RFC to perform at least semi-skilled para-professional work of the type he has performed in the past." *Id.* The ALJ explained Jones can understand, remember and carry out simple and some more complex job instructions as long as he remains abstinent. *Id.* The ALJ concluded Jones has the physical and mental RFC to return to his past relevant work as a drug counselor. *Id.* Thus, the ALJ ruled that Jones' claims failed at Step Four, meaning, his impairments did not preclude performance of his past relevant work activity. Jones was not disabled within the meaning of the SSA. (R. 42).

Although the ALJ found Jones was not disabled at Step Four, she made an alternative decision at Step 5. Basing her decision on the Medical-Vocational Guidelines, the ALJ found in the alternative, even if Jones could not perform as a drug counselor due to his

current use of methadone, Jones had acquired the skills as a drug counselor which are transferable to a significant number of other para-professional counseling positions in the national economy. (R. 43). Referencing Rule 201.03 of Table No. 1, Appendix 2, Subpart P, Regulations No. 4 and the VE's testimony about the transferability of his skills and considering Jones' physical and mental RFC, age, education, and work experience, the ALJ concluded Jones had transferable skills to other para-professional jobs. (R. 42-43).

## V. THE ALJ'S DECISION WAS NOT SUPPORTED BY SUBSTANTIAL EVIDENCE AT STEP FOUR AND STEP FIVE

The ALJ concluded Jones was not disabled because he was capable of performing his past relevant work. Claimant raises several issues on appeal. First, Claimant contends the ALJ erred by not accepting Dr. Miller's diagnosis and by not incorporating all of Claimant's limitations in the hypothetical which she posed to the VE. Second, Claimant asserts the ALJ erred in her assessment of Claimant's residual functional capacity for work from the standpoint of his mental impairments, claiming the ALJ is required and failed to further assess Claimant's mental residual functional capacity to work. Third, Claimant argues the ALJ made many errors at Step 5.

## A. THE ALJ'S DETERMINATION AS TO THE LISTING LEVEL OF IMPAIRMENT WAS SUPPORTED BY SUBSTANTIAL EVIDENCE

The Claimant argues the ALJ erred in concluding his mental impairments did not satisfy the Listing of Impairments under Listing 12.04 and substance abuse 12.09. Claimant asserts the ALJ erred by not citing Dr. Hudspeth's whole opinion, by discounting any

significant change in Claimant's life between Dr. Gil's examination and Dr. Miller's examination, by finding the Claimant's mental impairment is not severe, and posing a hypothetical to the VE which did not incorporate all of Claimant's limitations.

The ALJ articulated a legitimate reason for not finding the Claimant had a listing level of impairment. *Clifford v. Apfel*, 227 F.3d 863, 872 (7th Cir. 2000) (holding, the ALJ is not required to address every piece of evidence but he must articulate some legitimate reason for his decision). The ALJ reasoned the Claimant did not have a listing level of impairment under 12.09, which relates to substance abuse because the Claimant maintained his abstinence from drugs since 1996 and no evidence to the contrary was found within the record. (R. 32).

The ALJ found the Claimant did not have a listing level of depression, his memory and concentration were not markedly impaired, and there was no evidence of a dramatic loss of memory. (R.34-35). The ALJ found almost no evidence of depression existed prior to February 1998, which was two months before the hearing. (R. 32). In 1996, Dr. Gil performed examinations showing Claimant had a normal mental status and there was no evidence of psychosis or a thought process disorder. (R. 108-111). Also in 1996, Dr. Bridgeforth did not comment on any abnormal mental status during his examination. (R. 102-107).

The ALJ articulated reasons for not adopting Dr. Miller's opinions. (R. 34-35). Unlike Dr. Gil's assessment of the Claimant, Dr. Miller did not perform any objective tests

on the Claimant's concentration and memory. *Id.* The ALJ also explained the internal inconsistencies within Dr. Miller's own opinions and the lack of support for her conclusions. *Id.*

In 1996, Dr. Hudspeth prepared a mental RFC assessment of Claimant showing he had no limitations in understanding, memory, and in all areas of concentration and persistence. (R. 112-115). In comparing Dr. Hudspeth's assessment with Dr. Miller's assessment, the ALJ discussed the possible reasons for the differences in the opinions, concluding the only significant change in Claimant's life was his cessation of SSI benefits. (R. 38). The Claimant argues the ALJ did not address every part of Dr. Hudspeth's opinion; however, it is not this Court's duty to reweigh the evidence. *Powers*, 207 F.3d at 434-35. The ALJ explained her reasons for giving weight to Dr. Hudspeth's opinion; the ALJ is not required to address every piece of evidence as long as she articulates her reasons for her decisions, as she did here. *Clifford*, 227 F.3d at 872.

The Claimant argues the ALJ in fact found he had a severe disorder because she rated his mental disorder in the category of the frequency of his ability to concentrate, persist, and work at a pace in a timely manner as being "often" deficient, (R. 48), citing 20 C.F.R. § 416.920(c) and 20 C.F.R. Part 404, Subpart P, Appendix 1, Listing 12.00 (C)(3). In order to determine whether an impairment is severe, an ALJ must determine whether the impairment significantly limits a person's ability to perform basic work activities. 20 C.F.R. § 404.1520(c). Moreover, in assessing severity, the ALJ must examine not only

concentration, persistence, and pace, but also daily living, social functioning, and episodes of decompensation. 20 C.F.R. Part 404, Subpart P, Appendix 1, Listing 12.00 (C). The ALJ examined these areas and listed Claimant's restrictions of daily living as "slight," difficulties in maintaining social functioning as "slight," and episodes of decompensation as "never." (R. 48). The ALJ articulated her reasons for these findings by explaining the Claimant was able to function on a daily basis at home; he can perform daily activities such as cooking, household chores, reading, walking and watching television. (R. 39-40). Further, the ALJ reasoned the Claimant has good social, interactive and adaptive skills due to his commitment of attending the New Age program three times a week. (R. 41). No evidence of decompensation at work or work like settings was present since Claimant has not worked since 1988 and the Claimant regularly attended the New Age program. (34-35).

The Claimant contends the ALJ erred by not questioning the VE on Claimant's ability to concentrate, persist, and work at an acceptable pace, citing *Newton v. Chater*, 92 F.3d 688, 695 (8th Cir. 1996). *Newton* is distinguishable. In *Newton,* the court held the ALJ was in error because he did not include the claimant's deficiencies in concentration in his hypothetical to the VE. *Newton,* 92 F.3d at 695. The court reasoned the VE could not have been expected to remember the claimant's deficiencies in these areas from the record alone. *Id.* Here, the ALJ did pose hypotheticals to the VE incorporating into the questions, a person who has a ten percent decrease in concentration and a person who has interference with concentration from a third to a half of the time. (R. 434-35). Also, *Newton*, is an Eighth

Circuit case; The Seventh Circuit has held a hypothetical need not take into consideration every detail of the claimant's impairment especially if the VE has reviewed all the evidence prior to his decision. *Herron v. Shalala*, 19 F.3d 329, 336 (7th Cir. 1994). Here, although the ALJ did not incorporate the word "often" in her questions regarding concentration to the VE, she did pose questions to the VE regarding Claimant's ability to concentrate, satisfying the Seventh Circuit's holding in *Herron*. *Id.*

## B. THE ALJ'S DETERMINATION THAT CLAIMANT COULD RETURN TO HIS PAST WORK WAS NOT SUPPORTED BY SUBSTANTIAL EVIDENCE

Claimant asserts the ALJ did not adequately assess his ability to work because she erred in finding he could work at a semi-skilled employment, the VE testified Claimant's mental impairments would be incompatible with his past employment and the Claimant does not have transferable skills.

### 1. IT IS UNCLEAR WHETHER THE CLAIMANT CAN RETURN TO HIS PAST RELEVANT WORK

The ALJ erred by concluding the Claimant could return to his past relevant work because the VE testified the Claimant's mental impairments would be incompatible with his past employment. This Court finds there is no substantial evidence in the record to support the ALJ's decision finding the Claimant could return to his past relevant work. *Scivally*, 966 F.2d at 1075. Therefore, this case must be remanded to clarify this issue. The ALJ found the Claimant has occasional feelings of depression and other subjective problems which might interfere with Claimant's concentration, persistence and pace for a combined total of

up to 10% of the work day. (R. 44). The ALJ never explained how she calculated this percentage, but she did use it in her hypotheticals to the VE.

During the hearing, the ALJ questioned the VE whether a person who has an interference of up to ten percent of the work day in his concentration, persistence and pace would be able to work as a paraprofessional counselor. (R. 435). The VE answered a counselor has to be attentive all of the time when he is in the counseling sessions and he has to be 100 percent on task during this time. (R. 435-436). The VE further testified a counselor is able to take breaks throughout the day in which a counselor is not concentrating 100 percent. (R. 436). The implication of the VE's testimony is that Claimant could not return to his past relevant work if he could not perform at a 100% concentration level during the counseling session.

During the testimony, it is not clear whether a person who has up to a ten percent decrease in concentration can work as a counselor because it is not clear under the ALJ's questioning, what the meaning is of "*up to ten percent.*" The ALJ's hypothetical is ambiguous because it can be interpreted in two ways. The ALJ's hypothetical can be interpreted as meaning a person who has up to a ten percent decrease in concentration can concentrate 100 percent of the time during the counseling sessions and afterwards, the counselor can take a break and lose his concentration. This line of questioning can also be interpreted to mean that this hypothetical person randomly loses concentration and cannot control when he is going to be 100 percent on task. These two interpretations lead to two

opposite results. If the Claimant can choose when to be on task and concentrate for 100 percent of the time during the counseling sessions, then he could return to his past relevant work. However, if the Claimant randomly loses concentration, then he cannot be 100 percent on task during the counseling sessions and therefore, cannot work as a paraprofessional counselor.

Since it is unclear whether the Claimant can return to his past relevant work, this Court finds that the ALJ has not based her decision on "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 401.

### 2. THE ALJ ERRED AT STEP FIVE

The ALJ found the Claimant not to be disabled at Step Four of the evaluation, therefore, she had no obligation to assess the Claimant at Step Five. 20 C.F.R. § 416.920(a) (stating if the claimant is found disabled at any point in the review, the claim is not reviewed any further). The ALJ explained her reasoning at Step 5 was an alternative decision to her Step 4 decision in case Claimant was not able to turn to his past work as a drug counselor due to his methadone use. (R. 43).

### a. THE ALJ'S HYPOTHETICAL REGARDING THE CLAIMANT'S AGE WAS SUFFICIENT

The Claimant contends the ALJ erred in deciding the Claimant had transferable skills to other para-professional jobs, citing *Tom v. Heckler*, 779 F.2d 1250 (7th Cir. 1985). Claimant also argues the ALJ never included his advanced age while posing the hypotheticals

to the VE. *Id.* However, the ALJ explained the Claimant is of advanced age, has a GED, has the capacity to perform close to full range of sedentary work, and had acquired skills which are transferable to other similar positions. (R. 43). During the VE's testimony, the ALJ instructed the VE that for each hypothetical, the VE must consider the Claimant's age. (R. 434).

Further, this case is distinguishable from *Heckler*. In *Heckler*, the issue was whether the claimant had highly marketable skills because he was 62 years old, placing him in the retirement category. *Heckler*, 779 F.2d at 1256. Here, the Claimant was 57 years old at the time of the hearing, placing him in the advanced age category. The VE testified the Claimant would probably need *"some* course work" to transfer his skills to other para-professional jobs. (R. 346, 433).

### b. THE ALJ NEVER QUESTIONED THE VE ABOUT THE NUMBER OF JOBS IN THE NATIONAL ECONOMY

However, the ALJ erred at Step Five. At this step, the burden shifts to the Commissioner to show the Claimant is capable of performing other work which exists in the national economy. 42 U.S.C. § 423(d)(2)(A). The VE testified if the Claimant was not able to return to his past relevant work, his skills were transferable to other counseling jobs like intake workers or a post traumatic stress disorder counselor. (R. 433). However, the VE never identified the skills that would be transferable nor stated the number of jobs available to the Claimant in the national economy. (R. 433-434). Therefore, the ALJ erred in concluding he had acquired skills which are transferable to other occupations in the national economy. (R. 44).

## VI. CONCLUSION

For the foregoing reasons, Plaintiff's motion for summary judgment is granted, Defendant's motion for summary judgment is denied, and the case is remanded to the Commissioner pursuant to the fourth sentence of 42 U.S.C. § 405(g) for further proceedings consistent with this opinion. The Commissioner is ordered to readjudicate Claimant's claim of disability beginning at Step Four.

SO ORDERED THIS 12th DAY OF MARCH, 2002.

_Morton Denlow_
**MORTON DENLOW**
**United States Magistrate Judge**

**Copies mailed to:**

Frederick J. Daley
Frederick J. Daley Ltd.
727 South Dearborn Street
Suite 613
Chicago, Illinois 60604

Attorney for Plaintiff

Lisa M. Noller
Assistant United States Attorney
Office of the United States Attorney
219 South Dearborn Street, 5th Floor
Chicago Illinois, 60604

Edward J. Kristof
Assistant Regional Counsel
Social Security Administration
Office of the General Counsel, Region V
200 West Adams Street, 30th Floor
Chicago, Illinois 60606

Attorneys for Defendant

## VI. CONCLUSION

For the foregoing reasons, Plaintiff's motion for summary judgment is granted, Defendant's motion for summary judgment is denied, and the case is remanded to the Commissioner pursuant to the fourth sentence of 42 U.S.C. § 405(g) for further proceedings consistent with this opinion. The Commissioner is ordered to readjudicate Claimant's claim of disability beginning at Step Four.

SO ORDERED THIS 12th DAY OF MARCH, 2002.


_____
**MORTON DENLOW**
**United States Magistrate Judge**


**Copies mailed to:**

Frederick J. Daley
Frederick J. Daley Ltd.
727 South Dearborn Street
Suite 613
Chicago, Illinois 60604

Attorney for Plaintiff

Lisa M. Noller
Assistant United States Attorney
Office of the United States Attorney
219 South Dearborn Street, 5th Floor
Chicago Illinois, 60604

Edward J. Kristof
Assistant Regional Counsel
Social Security Administration
Office of the General Counsel, Region V
200 West Adams Street, 30th Floor
Chicago, Illinois 60606

Attorneys for Defendant